UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIA B. SOTO,

                                Plaintiff,

                v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

**MEMORANDUM AND ORDER**

19-CV-2184 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Maria B. Soto, proceeding pro se, appeals the denial by Defendant Commissioner of Social Security (the "Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  The Commissioner moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

## BACKGROUND[1]

### I.    Plaintiff's DIB Application

Plaintiff applied for DIB on June 23, 2014, alleging disability since January 1, 2011, due to imbalance, left leg spurs, benign paroxysmal positional vertigo, tropical spurs, high back spasm and pain, leg pain and cholesterol.  (Tr. 23, 191-192, 222, ECF No. 7.)  After her application and request for reconsideration were denied, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 114-117, 119-121, 122-23.)  The hearing was held on April 17, 2017.  (Tr. 63-80.)  Plaintiff was represented in the hearing.  (Tr. 63.)  The ALJ heard testimony from Plaintiff and a vocational expert.  (Tr. 63-80.)  On August 9, 2017, the ALJ issued a decision finding that Plaintiff was not disabled through the date she was last insured:

---

[1] The following facts are taken from the administrative transcript, cited in this opinion as "Tr."  (ECF No. 12.)

December 31, 2016.  (Tr. 23-30.)  On February 13, 2019, the Appeals Council denied Plaintiff's

request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 3–5.)

## II.   Non-Medical Evidence

Plaintiff was born on February 21, 1963.  (Tr. 191.)  She has a sixth or eighth grade

education and previously worked as an office clerk.  (Tr. 76, 223-24.)  At the ALJ hearing,

Plaintiff testified that she stopped working because she felt unbalanced, causing her to miss a lot

of work.  (Tr. 68.)  Plaintiff also testified that she has problems with her back, and had carpal

tunnel.  (*Id.*)  In addition, Plaintiff suffers from leg pain due to arthritis, from which medication

provided temporary relief.  (Tr. 69.)  Plaintiff's daughter performs household tasks, including

any driving.  (*Id.*)  Plaintiff can bathe and dress herself, except she cannot wash her own hair.

(*Id.* 70.)  Plaintiff can only walk "for a little bit" before she has to rest because of pain and she is

limited in how much she can raise her arms.  (Tr. 71-72.)  She takes medication for reflux and

vertigo.  (Tr. 70-72.)

The vocational expert testified that an individual who is limited to light work with

additional limitations would retain the ability to perform Plaintiff's previous job as an office

clerk.  (Tr. 77.)

## III.   Medical Evidence

### A.  Wrist, Back, Shoulder, Extremity Pain

Regarding Plaintiff's wrist, back, and lower extremity pain, a January 21, 2014 x-ray of

her wrists and left foot were normal.  (Tr. 332.)  On May 14, 2014, Plaintiff saw Griselle Perez

Santiago, M.D., for complaints of neck and back pain.  (Tr. 381-82.)  Dr. Santiago ordered a

cervical MRI, which was conducted on May 16 and revealed disc bulges with no evidence of

stenosis.  (Tr. 378.)  On June 11, 2014, Plaintiff was referred to a physiatrist due to left foot

complaints.  (Tr. 368.)   On August 6, 2014, an EMG and nerve conduction study of Plaintiff's

upper extremities demonstrated bilateral wrist entrapment neuropathy (moderate on the right and mild on the left).  (Tr. 409-12.)  She was advised to pursue physical therapy, take vitamins, and receive cock-up splints.  (Tr. 412.)  An EMG and nerve conduction study of Plaintiff's lower extremities was normal.  (Tr. 414-17.)  On August 28, 2014, Plaintiff complained of back pain, (Tr. 389-90), and an August 29, 2014 lumbar CT scan revealed thoracolumbar levoscoliosis. (Tr. 392.)   A CT scan of the left foot from August 29 revealed a bone exostosis (or bone spur). (*Id.*)  An MRI of Plaintiff's lumbosacral spine, performed on October 20, 2014, revealed the presence of exaggerated lumbar lordosis, a small central disc bulge at L4-5 and L5-S1, and an absence of stenosis with normal intervertebral foramina.  (Tr. 427.)

On January 29, 2015, x-rays of Plaintiff's right knee revealed minimal degenerative changes.  (Tr. 523.)  An August 11, 2015, right knee MRI revealed mild chondromalacia and a small joint effusion, with no evidence of a tear or rupture and normal cruciate ligaments.  (Tr. 539.)  On July 9, 2016, Plaintiff complained of right shoulder pain, (Tr. 598), and a right shoulder x-ray revealed no evidence of acute fracture or subluxation.  (Tr. 605.)   An October 18, 2016, MRI of Plaintiff's right shoulder revealed minimal rotator cuff tendinopathy with no evidence of a tear, mild subacromial subdeltoid bursitis, and minimal early acromioclavicular joint degenerative joint disease.  (Tr. 552.)

On January 25, 2017, Plaintiff received a Toradol injection for shoulder pain.  (Tr. 584-85.)  Her shoulder pain was improved with over-the-counter medication, and she was sent to physical therapy.  (Tr. 581, 577.)  She had full range of motion in all extremities and 2+ deep tendon reflexes in both upper extremities.  (Tr. 581.)  A March 27, 2017, left knee MRI revealed no evidence of internal joint derangement or acute osseous injury, mild tibiofemoral joint

degenerative joint disease with slightly extruded menisci and mild degenerative free edge blunting, and a small suprapatellar effusion (small water in the knee).  (Tr. 677.)

### B.  Vertigo

Plaintiff's medical history reflects a diagnosis of benign positional paroxysmal vertigo. For example, in 2010, Plaintiff saw Dr. Gustavo Gigante twice.  (Tr. 284-289.)  Plaintiff complained of, and was diagnosed with, vertigo, and was prescribed vitamins as treatment.  (*Id.*) Likewise, she presented to San Francisco Hospital on several occasions with benign positional vertigo.  (*See, e.g.,* Tr. 294, 304.)  On August 5, 2014, Dr. Jorge Lugo Rodriguez confirmed Plaintiff's vertigo diagnosis.  (Tr. 376.)  She sought medical treatment for her vertigo in 2016. (Tr 541.)  In one appointment, for example, Dr. Mario Corona Ruiz found a normal physical examination, diagnosed Plaintiff with paroxysmal vertigo and noted that she responded well to Antivert medication.  (Tr. 541-543.)

### C.  Medical Opinions

There are several consultative medical opinions in the record.  On August 29, 2014, Plaintiff saw Martin Martino Berio, M.D., for a consultative orthopedic examination.  (Tr. 394-95.)  Dr. Berio observed that Plaintiff was able to get onto the examination table without assistance.  (*Id.*)  Plaintiff complained of vertigo and cervical back muscular spasms.  (*Id.*)  On examination, Plaintiff had no atrophy of the upper extremities; demonstrated normal range of upper extremity motion; and had 5/5 strength bilaterally.  (Tr. 395.)  Plaintiff walked normally; was able to perform 50% of a squat; and had full range of back movement without limitation. (*Id.*)  Dr. Berio's assessment was that Plaintiff's neck and back pain was compatible with muscle spasms, but otherwise found that Plaintiff was able to "perform daily basic things."  (*Id.*)  Dr. Berio's assessment was not accompanied by any other more-detailed functional assessment.

4

Two state agency medical consultants reviewed Plaintiff's file and completed Disability Determination Explanations—Rafael Queipo, M.D. on September 11, 2014, and Pedro Nieves, M.D. on December 2, 2014.  (Tr. 81-93, 95-109.)  Both opined that Plaintiff could: stand and/or walk about six hours in an eight-hour work day; sit about six hours in an eight-hour work day; push and/or pull to an unlimited degree except as indicated for lifting and carrying; frequently climb ramps/stairs, balance, stoop, and kneel; and occasionally climb ladders/ropes/scaffolds, crouch, and crawl.  (Tr. 90-91, 106-107.)  Dr. Queipo opined that Plaintiff could lift 25 pounds occasionally and 20 pounds frequently.  (Tr. 90.)  Dr. Nieves opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently.  (Tr. 106-07.)

On August 5, 2014, Plaintiff saw Jorge Lugo Rodriguez, M.D., an internist-cardiologist, for a consultative examination.  (Tr. 376.)  Plaintiff informed Dr. Lugo Rodriguez that her vertigo episodes occurred 2-3 per week, required her to stay home from work 2-3 times/month and that she had experienced 10-15 episodes that year.  (*Id.*)  Episodes lasted all day, and gave her a dizzy feeling, like things were rotating around her.  (*Id.*)  On examination, Dr. Lugo Rodriguez opined that her external ear and middle ear were normal, but noted an abnormality in tympanic membrane, namely a small amount of cerumen in her ears.  (*Id.*)  He diagnosed benign positional paroxysmal vertigo.  (*Id.*)  His opinion was not accompanied by any more fulsome functional assessment.

## STANDARD OF REVIEW

Under the Act, a disability claimant may seek judicial review of the Commissioner's decision to deny his application for benefits.  42 U.S.C. §§ 405(g), 1383(c)(3); *see also Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012).  In conducting such a review, the Court is tasked only with determining whether the Commissioner's decision is based upon correct legal standards and supported by substantial evidence.  42 U.S.C.

§ 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).  The substantial-evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . . .").  Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In deciding whether substantial evidence supports the Commissioner's findings, a court must examine the entire record and consider all evidence that could either support or contradict the Commissioner's determination.  *See Jones ex rel. T.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at *4 (E.D.N.Y. Mar. 17, 2010) (citing *Snell v. Apfel*, 171 F.3d 128, 132 (2d Cir. 1999)), *aff'd sub nom.*, *Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011) (summary order).  Still, a court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence.  *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.  *Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)).  Indeed, if supported by substantial evidence, the Commissioner's findings must be sustained, even if substantial evidence could support a contrary conclusion or where a court's independent analysis might differ from the Commissioner's.  *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F.

Supp. 704, 706 (W.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984).

## DISCUSSION

### I.  ALJ's Opinion is Supported by Substantial Evidence

To be eligible for disability benefits under 42 U.S.C. § 423, a claimant must establish her

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than twelve months," and the impairment must be of "such severity that he is

not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any kind of substantial gainful work which exists in the national

economy."  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Balsamo v. Chater*, 142 F.3d 75,

79 (2d Cir. 1998).  Additionally, "an applicant must be 'insured for disability insurance

benefits'" at the time of his disability onset.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)

(quoting *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989); 42 U.S.C. §§ 423(a)(1)(A),

423(c)(1)).

The Commissioner's regulations prescribe the following five-step framework for

evaluating disability claims:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Commissioner will consider him per se disabled. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation and internal modifications omitted); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ correctly determined that Plaintiff had not engaged in substantial gainful activity between her alleged disability-onset date of January 1, 2011, and the date she was last insured, December 31, 2016. (Tr. 25.)

At step two, the ALJ's determination that, through the date Plaintiff was last insured, she had the severe impairments of cervical and lumbar spinal degenerative disease, bilateral knee degenerative joint disease, right shoulder tendinopathy and bursitis, and obesity is supported by the record. (Tr. 25.) The ALJ's finding that Plaintiff's other myriad of health conditions, including vertigo and carpal tunnel, were non-severe impairments is also supported by the record. (Tr. 25–26.) Specifically, Plaintiff's vertigo was treated with Antivert. (Tr. 543.) And while she was diagnosed with bilateral wrist entrapment neuropathy (moderate on the right and mild on the left), she was advised to pursue physical therapy, take vitamins, and receive cock-up splints as treatment. (Tr. 412.) In other words, there was substantial evidence to support the finding that her ability to perform work-related activities were not affected more than minimally for a period of 12 months or more due to her vertigo and wrist pain/carpal tunnel.

At step three, the ALJ determined that, through the date Plaintiff was last insured, her impairments, alone or in combination, did not meet or medically exceed the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26.)

With respect to disorders of the musculoskeletal system, the ALJ looked to Listing 1.02. (Tr. 26.) Listing 1.02 regards disability due to major dysfunction of a joint. Relevant here, it is characterized by "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on

appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s), [w]ith involvement of one major peripheral weight-bearing joint . . ., resulting in inability to ambulate effectively . . . or involvement of one major peripheral joint in each upper extremity . . . resulting in inability to perform fine and gross movements effectively[.] "  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02B.  There is substantial evidence to support the finding that Plaintiff did not demonstrate an inability to ambulate effectively or perform fine and gross motor skills effectively.  (Tr. 26.)  As the ALJ noted, Dr. Berio's consultative examination reflected that Plaintiff had no atrophy and normal motor strength, reflexes and gait.  (Tr. 26-27, 395.)  Furthermore, Plaintiff's EMG testing demonstrated normal findings in the lower extremities.  (Tr. 27, 404-417.)  Lastly, the finding is supported by radiological evidence—X-rays and MRIs—which showed "minimal," "minor" or "mild" issues with the knee joints and cartilage.  (Tr. 523, 539, 677.)

The ALJ also properly found that Plaintiff did not satisfy the criteria for Listing 1.04 for disorder of the spine.  (Tr. 26.)  Listing 1.04 regards disability due to disorders of the spine—characterized by compromise of a nerve root or the spinal cord—with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  Plaintiff's May 2014 MRI revealed a disc bulge at the C3-C4 with no stenosis.  (Tr. 378.)  Her back x-rays from 2013 were normal and an August 2014 CT scan revealed minimal scoliosis.  (Tr. 386, 392.)  Physical examinations revealed mostly normal findings, other than some limitations in range of motion or muscle spasms.  (*See, e.g.* Tr. 394-395, 497.)  Thus, there is substantial evidence in the record to support the finding that Plaintiff is not considered per se disabled.

At step four, the ALJ's determination that Plaintiff retained the residual functional capacity ("RFC") to perform her past work as an office clerk is supported by substantial evidence in the record.  (Tr. 27-30.)  More specifically, the ALJ found that Plaintiff's conditions limited her to light work, with six hours of sitting and four hours each of walking and standing; occasional climbing, crouching, and crawling; and frequent stooping and kneeling.  (Tr. 27.) The ALJ limited Plaintiff to lifting and carrying 20 pounds occasionally, and 10 pounds frequently.  (Tr. 27.)  The ALJ explained that she limited Plaintiff to "frequent balancing" and precluded her from working at unprotected heights to address Plaintiff's obesity and episodes of vertigo.  (Tr. 29.)

In crafting the RFC, the ALJ gave partial weight to the opinion of the state agency medical consultants, a finding supported by substantial evidence.  (Tr. 29.)  The ALJ correctly noted that state agency medical consultants are deemed, by regulation, to be "highly qualified and experts in Social Security disability evaluation," and their opinions constitute medical evidence.  20 C.F.R. § 404.1513a(b)(i); (Tr. 29.)  However, in acknowledging these experts did not have the benefit of speaking to Plaintiff, the ALJ added additional limitations with standing and walking based on Plaintiff's testimony.  (Tr. 29.)  Specifically, both state agency medical consultants stated that Plaintiff could stand and walk about six hours in an eight-hour work day, (Tr. 90-91, 106-107), and the ALJ reduced that number to four hours of each.  (Tr. 27.)

Likewise, the ALJ's assignment of significant weight to Dr. Berio is supported by substantial evidence.  Generally, Plaintiff had a normal examination, except for complaints of neck pain and impaired balance.  (Tr. 394-95.)  Dr. Berio opined that Plaintiff's neck and back pain was compatible with muscle spasms, but otherwise found that Plaintiff was able to "perform daily basic things."  (Tr. 395.)  Dr. Berio's assessment was supported by the many objective

medical tests in the record that showed normal or mild findings, which include, *inter alia*: a January 21, 2014, x-ray of Plaintiff's wrists and left foot with normal finding, (Tr. 332); an MRI conducted on May 16, 2014, which revealed disc bulges, but with no evidence of stenosis, (Tr. 378);  an October 2014 EMG of her lower extremities that was normal, (Tr. 414-17); a January 29, 2015, x-ray of Plaintiff's right knee that revealed minimal degenerative changes, (Tr. 523); a October 18, 2016, MRI of Plaintiff's right shoulder that revealed minimal rotator cuff tendinopathy with no evidence of a tear, mild subacromial subdeltoid bursitis, and minimal early acromioclavicular joint degenerative joint disease, (Tr. 552); and, a March 27, 2017, left knee MRI that revealed no evidence of internal joint derangement or acute osseous injury, mild tibiofemoral joint degenerative joint disease with slightly extruded menisci and mild degenerative free edge blunting, and a small suprapatellar effusion (small water in the knee), (Tr. 677).

Lastly, the ALJ's assignment of partial weight to Dr. Rodriguez is supported by substantial evidence.  The ALJ stated that "claimant's reports of two to three episodes [of vertigo] per week, 10 to 15 episodes for the year, and having to be away from work two to three times a months due to symptoms were mutually inconsistent and also inconsistent with her treatment records showing good control of symptoms with medications." (Tr. 30.)  Dr. Rodriguez's observation that Plaintiff had two to three episodes of vertigo per week equates to nearly 100 episodes over the course of 12 months.  However, according to Dr. Rodriguez's August 2014 examination notes, Plaintiff had only suffered 10 to 15 episodes that year.  (*See* Tr. 376.)  As such, Dr. Rodriguez's evaluation notes were indeed internally inconsistent and inconsistent with medical evidence in the record that her vertigo was treated with Antivert.  (*See* Tr. 543.)

11

As to Plaintiff's carpal tunnel, which was found to be moderate on one side, the ALJ noted the conservative treatment pursued—physical therapy, splints, and no ongoing treatment for 12 months. (*See* Tr. 26; 412.)  Nevertheless, the ALJ considered Plaintiff's testimony and adjusted her RFC be more restrictive than any medical opinion as a result of her subjective complaints. (Tr. 29.)  The ALJ's RFC is therefore supported by substantial evidence.

The ALJ then relied on testimony from a vocational expert who—in response to a hypothetical posed about someone with Plaintiff's RFC—found that Plaintiff was able to perform her past relevant work as an office clerk. (Tr. 30; 76-77.)  Having found that Plaintiff was capable of performing her past relevant work, the ALJ was not required to proceed to step five.  20 C.F.R. § 404.1520(f) ("[W]e will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work. . . . If you can still do this kind of work, we will find that you are not disabled.").

## II.   Additional Medical Evidence Submitted by Plaintiff Does Not Mandate Remand

In opposition, Plaintiff attached additional medical evidence from October and November 2019 and January 2020 that was not put before the ALJ. (Pl.'s Opp. 2-20, ECF No. 18.)  Defendant argues that such evidence does not mandate remand. (Def.'s Reply Mem. Supp. Mot. J. Plead. ("Def.'s Reply") 1-3, ECF No. 18.)  The Court agrees.

In order to remand based on new evidence that was not before the ALJ:

> [A]n appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier.

12

*Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (internal citations and quotation marks omitted).  Evidence generated after the ALJ's decision may still be considered material, provided it relates to the time period for which benefits were denied. *See Newbury v. Astrue*, 321 Fed. App'x. 16, 18 n.2 (2d Cir. 2009) ("For example, subsequent evidence of the severity of a claimant's condition may demonstrate that during the relevant time period, the claimant's condition was far more serious than previously thought." (internal quotation marks, citation, and alteration omitted)).  Plaintiff's new medical evidence is not material as there is no reasonable possibility that it would have influenced the Commissioner to decide her application differently. To start, the earliest new evidence submitted by Plaintiff is from October 2019, almost three years after December 31, 2016, the date Plaintiff was last insured.  Such evidence is likely too far removed from the relevant period to be material.  *See Rodriguez v. Colvin*, No. 14-CV-6552 (RRM), 2016 WL 5477587, at *11 (E.D.N.Y. Sept. 28, 2016) (applying *Jones*, 949 F.2d at 60, on an appeal of whether a child recipient of social security income was eligible for DIB after he turned 18, and finding that the submission of certain medical records attached to Plaintiff's opposition papers failed the materiality requirement because the records were dated three years from when the child turned 18).

Furthermore, the evidence submitted—which includes carpal tunnel treatment records, an MRI which found disc-protrusion, and a functional capacity evaluation—cannot reasonably support a finding that the claimant's condition was far more serious than previously thought.  In particular, the functional capacity evaluation submitted by Plaintiff, dated November 1, 2019, confirms many of the ALJ's RFC findings.  The evaluator opined that Plaintiff could sit for six hours, stand for four hours, and walk for three hours, and occasionally use of stairs and squatting—all findings almost exactly aligned with the ALJ's RFC determination.  (*Compare*

13

Pl.'s Opp. 18-19 *with* Tr. 27.)  The main difference in the evaluation vis-à-vis the RFC

determination was the amount that Plaintiff could lift and carry, as the evaluation notes greater

limitations in lifting and carrying.  (*Id.*)  Nevertheless, given that this evaluation was done three

years after the date last insured, the Court cannot find that there is a reasonable possibility that

this new evidence would have influenced the Commissioner to decide claimant's application

differently.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is

GRANTED, and the final decision of the Commissioner is affirmed.

SO ORDERED.

Dated: Brooklyn, New York                    /s/ LDH
      November 25, 2020                    LASHANN DEARCY HALL
                                      United States District Judge